FILED
IN CLERK'S OFFICE

2024 JUN 12 PM 2: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> ADAM BIED, <br><br> Defendant | Criminal No. <br><br> Violations: 24cr10171 <br><br> Counts One - Two: 18 U.S.C. § 371 (Conspiracy to Violate 18 U.S.C. § 545 (Smuggling Goods into the United States); 16 U.S.C. §§ 3372(a), 3373(d), (Lacey Act); and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b) (Endangered Species Act)) <br><br> Counts Three - Five: 16 U.S.C. § 3375 (Lacey Act Trafficking) <br><br> Forfeiture Allegation: <br> (16 U.S.C. §§ 1540(e)(4), 3374(a); 18 U.S.C. §§ 545, 981(a)(1)(C), 982(a)(2)(B); 19 U.S.C. § 1595a(c)(2)(B); and 28 U.S.C. § 2461(c)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1.      Adam BIED was an individual residing within the Eastern District of New York and the District of Massachusetts, and was in the business of purchasing, selling, and trading parts, primarily skulls, from wildlife, including parts from endangered and protected species.

2.      Co-Conspirator-1 (referred to herein as "CC-1") was an individual residing in Cameroon and was in the business of killing and acquiring wildlife, including endangered and protected species, and supplying parts from that wildlife to BIED.

3.      Co-Conspirator-2 (referred to herein as "CC-2") was an individual residing in Indonesia and was in the business of acquiring wildlife, including endangered and protected species, and supplying parts from that wildlife to BIED.

Statutory Framework of Wildlife Protection

4. The statutory framework of federal wildlife statutes involves a multi-layered approach designed to prohibit commercial exploitation occurring because of international and interstate trade in vulnerable wildlife species. In combination, the multiple laws and regulations set forth herein ensure that illegal trade is prohibited and ensure that any use of wildlife and plants is sustainable. *See* 50 C.F.R § 23.1(a) – (c). Persons who engage in the purchase and sale of protected species and who wish to import or export any part of a species protected by the federal laws set forth herein must comply with the import and export declarations and must truthfully identify any parcel containing any part of the protected species.

5. The Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES") was an international agreement among approximately 183 governments, including the United States, Cameroon, and Indonesia, to protect fish, wildlife, and plants that are, or may become, threatened with extinction. CITES establishes import and export restrictions to protect these species from overexploitation through international trade.

6. Under CITES, species are protected according to a classification system known as "appendices." International trade in species listed in these appendices is monitored and regulated by permits and quotas. The permit restrictions apply to live and dead specimens, as well as the skins, parts, and products made in whole or in part from a listed species.

7. Wildlife and plant species listed in Appendix I of CITES are threatened with extinction. Those listed in Appendix II of CITES include species that are not presently threatened with extinction but may become so if their trade is not regulated. Appendix II species may be allowed in trade; however, they are strictly regulated and monitored. To import an Appendix II species into the United States, the exporter must obtain a valid "foreign export

2

permit," issued by the specimen's country of origin, prior to importation.

8. CITES is implemented in the United States through the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and the U.S. Fish and Wildlife Service ("USFWS") has promulgated regulations to implement CITES' requirements. *See* 16 U.S.C. §§ 1532(4), 1537a, 1538(c), 1538(g), 1539(g), 1540(f); 50 C.F.R. part 23. In general, CITES requires permits for protected species crossing an international border, 50 C.F.R. § 23.13(a), and valid CITES permits are required to be presented at the port for international trade when CITES-listed species are imported/exported. *See* CITES at art. II-VIII; 16 U.S.C. §§ 1537a, 1538(c); 50 C.F.R. §§ 23.26, 23.27.

9. In addition to its own listing procedures, the ESA also prohibits "any person … to engage in any trade in any specimens contrary to the provisions of [CITES]." 16 U.S.C. § 1538(c). The ESA contains both substantive and procedural requirements designed to, "provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of treaties and conventions set forth in [the ESA, including CITES]." 16 U.S.C. §§ 1531(b), 1538(c)(1) (incorporating CITES into U.S. domestic law through the ESA). Pursuant to this authority, the USFWS has promulgated a regulation extending the general import prohibition on endangered and threatened species. *See* 50 C.F.R. § 17.31(a).

10. The Lacey Act, at 16 U.S.C. § 3371 et. seq. ('the Act") prohibits the import, export, transport, purchase, receipt, acquisition, and sale of wildlife that was taken or possessed in violation of any law, treaty, or regulation of the United States. 16 U.S.C. §§ 3372(a)(1), 3373(d)(1)(B).

11. The Act prohibits any false record, account, or label for, or any false identification

3

of, any wildlife which has been, or is intended to be, imported, exported, transported, sold, purchased or received from any foreign country, or transported in interstate or foreign commerce. 16 U.S.C. § 3372(d)(1) and (2).

12. The Act defines wildlife as an alive or dead wild animal, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring. 16 U.S.C. § 3371(b).

13. All imported wildlife relevant to this Information was required to be declared to the USFWS in the United States. A true and complete declaration Form 3-177, *Declaration for Importation or Exportation of Fish or Wildlife*, must be filed at or before the time of importation. 16 U.S.C. § 1538(e); 50 C.F.R. § 14.61. Federal regulations also require that the USFWS clear all wildlife imported into the United States, and that the importer or his agent make available the wildlife being imported to the officer, as well as all required permits, licenses, or other documents. 50 C.F.R. § 14.52. The wildlife may only be cleared at certain ports authorized in the regulations, unless specifically authorized elsewhere. 50 C.F.R. § 14.11.

14. 18 U.S.C. § 545 makes it unlawful for any person who, knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the custom house any false, forged, or fraudulent invoice, or other document or paper.

15. 18 U.S.C. § 545 also makes it unlawful for any person to fraudulently or knowingly import or bring into the United States, any merchandise contrary to law, or to receive, conceal, buy, sell, or in any manner, facilitate the transportation, concealment, or sale or such merchandise after the importation, knowing the same to have been imported or brought into the

United States contrary to law.

### Relevant Species Information

16.     The world's three species of Orangutan (*Pongo spp.*) can only be found in Indonesia. Orangutans spend their lives living in trees in the tropical forests of Borneo and Sumatra, islands within Indonesia. Indonesia is a signatory country to the Convention and all three Orangutan species are listed in Appendix I of CITES, as well as listed as "endangered" under the ESA.

17.     Indonesia is also home to two types of leopards. The Javan leopard (*Panthera pardu melas)*, a leopard subspecies, and the Sunda clouded leopard (*Neofelis diardi*). Both are listed in Appendix I of CITES, as well as listed as "endangered" under the ESA.

18.     The Sun Bear (*Helarctos malayanus*), also known as the Honey Bear, is only found in Southeast Asian tropical forests including Indonesia. The Sun Bear is listed in Appendix I of CITES.

19.     Cameroon has Africa's second highest concentration of biodiversity and is home to more than 409 species of mammals. Virtually all the species of mammals in Cameroon face threats to their habitat. Species relevant to this investigation, including the chimpanzee (*Pan troglodytes*), baboon *(Papio anubis)*, drill (*Mandrillus leucophaeus*), and mandrill (*Mandrillus sphinx*), are listed in Appendix I of CITES, as well as listed as "endangered" under the ESA. Also relevant to this investigation is the pangolin (*Phataginus sp.*). There are currently eight subspecies of the Pangolin, three of which are found in Cameroon. All eight species are listed in Appendix I of CITES.

COUNT ONE
(18 U.S.C. § 371)
CONSPIRACY TO VIOLATE 18 U.S.C. § 545; 16 U.S.C. § 3372(a); 3373(d) and 16 U.S.C. §§ 1538(a)(1)(A) and 1540(b)

The Acting United States Attorney charges:

20.     The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-19 of this Information.

21.     Beginning at least as early as January 2018, and continuing until June of 2021, the exact dates being unknown, in the District of Massachusetts and elsewhere, the defendant,

ADAM BIED,

knowingly conspired, confederated, and agreed with others known and unknown, including CC-1, to commit offenses against the United States, that is:

(a) to knowingly import and bring into the United States, merchandise, namely wildlife, including CITES-protected wildlife, contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to laws and regulations of the United States, in violation of 18 U. S. C. § 545; to smuggle goods into the United States in violation of 18, U.S.C. § 545; and

(b) to knowingly import, transport, sell, receive, acquire, and purchase wildlife taken, possessed, transported, and sold in in violation of the laws and regulations of the United States, in violation of 16 U.S.C. §§ 3372 (a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).

Manner And Means

22.     In furtherance of the conspiracy and to affect the illegal objects thereof, BIED communicated via electronic messages with CC-1 to order and purchase wildlife, particularly the skulls of endangered and protected species, including pangolin, chimpanzee, and mandrill.

23.     In furtherance of the conspiracy and to affect the illegal objects thereof, after BIED placed an order for skulls, CC-1 collected, captured, and killed, various species of

primates and other mammals from the wild in Cameroon, and shipped the skulls to BIED in the United States.

23. In furtherance of the conspiracy and to affect the illegal objects thereof, and to avoid scrutiny from U.S. authorities, CC-1 falsely labeled shipments containing skulls, including labeling shipments as "resin" and/or "rodents."

24. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED paid CC-1 for the wildlife through MoneyGram.

25. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED sold and traded skulls he acquired from CC-1 and then shipped those skulls to customers in the United States.

26. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED failed to declare the wildlife to the USFWS upon import and did not possess a USFWS import/export license required for commercial imports. Moreover, BIED and CC-1 failed to obtain the necessary CITES permits.

Overt Acts in Furtherance of the Conspiracy

27. On or about June 12, 2019, BIED electronically transferred $285.00 to CC-1's wife as payment for two baboon skulls, five monkey skulls, and one eagle skull.

28. On or about July 27, 2019, BIED electronically transferred $300 via MoneyGram to CC-1's wife as payment for multiple skulls, including a pangolin skull. The shipment was falsely labeled as "rodents.'

All in violation of 18 U.S.C. § 371 (Conspiracy to Violate 18 U.S.C. § 545; 16 U.S.C. §§ 3372 (a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A) and 1540(b)).

7

## COUNT TWO
### CONSPIRACY TO VIOLATE 18 U.S.C. § 545; 16 U.S.C. § 3372(a); 3373(d) and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).
### (18 U.S.C. § 371)

29. The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-19 of this Information.

30. Beginning at least as early as February 2020, and continuing until April of 2021, the exact dates being unknown, in the District of Massachusetts and elsewhere, the defendant,

**ADAM BIED,**

knowingly conspired with CC-2 and others known and unknown to commit offenses against the United States, to wit, that is:

(a) to knowingly import and bring into the United States, merchandise, namely wildlife, including CITES-protected wildlife, contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to laws and regulations of the United States, in violation of 18 U.S.C. § 545; to smuggle goods into the United States in violation of 18 U.S.C. § 545; and

(b) to knowingly import, transport, sell, receive, acquire, and purchase wildlife taken, possessed, transported, and sold in in violation of the laws and regulations of the United States, in violation of 16 U.S.C. §§ 3372 (a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).

### Manner And Means

31. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED communicated via electronic messages with CC-2 to order and purchase wildlife, particularly the skulls of endangered and protected species, including leopard, orangutan, and the sun bear.

32. In furtherance of the conspiracy and to affect the illegal objects thereof, after BIED placed an order for skulls, CC-2 collected various species of primates and other mammals from the wild in Indonesia and shipped the skulls to BIED in the United States.

33. In furtherance of the conspiracy and to affect the illegal objects thereof, and to avoid scrutiny from U.S. authorities, CC-2 falsely labeled shipments containing skulls, including labeling shipments as "decorative masks".

34. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED paid CC-1 for the wildlife through PayPal.

35. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED sold and traded skulls he acquired from CC-2 and then shipped those skulls to customers in the United States.

36. In furtherance of the conspiracy and to affect the illegal objects thereof, BIED failed to declare the wildlife to the USFWS upon import and did not possess a USFWS import/export license required for commercial imports. Moreover, BIED and CC-2 failed to obtain the necessary CITES Permits.

<u>Overt Acts in Furtherance of the Conspiracy</u>

37. On or about January 30, 2021, CC-2 informed BIED that he had an orangutan skull for sale. CC-2 sent pictures of the skull. *See* Exhibit 1 below. Further email communications between CC-2 and BIED were exchanged regarding the price, which was settled at $2,500. When the negotiations were complete, BIED wrote to CC-2, "Sounds good. I would encourage you to package it well for obvious reasons."

38. On or about January 31, 2021, BIED sent CC-2 $2,500 via PayPal. In a subsequent email on February 16, 2021, BIED confirmed receipt of the skull.



*Exhibit 1 – Orangutan Skull Smuggled into the United States in February of 2021.*

39. On March 7, 2021, BIED and another individual, caused a package to be sent to the United States which arrived at the United Parcel Service ("UPS") hub in Louisville, Kentucky. *See* Exhibit 2 below. BIED and another individual caused the parcel to have a false description which failed to truthfully include its wildlife contents and was falsely described only as a Decorative Mask. Upon opening the package, skulls were found hidden inside one of the ceramic decorative masks. A USFWS wildlife inspector identified one skull as orangutan and the other three skulls as belonging to large cats from the Felidae family. The three large cat skulls were later identified as leopard skulls.

40. On March 10, 2021, a wildlife inspector used an invisible fluorescent marker to mark one of the large cat skulls from the March 7, 2021, package. The markings – an invisible, fluorescent "7" – were made on the inner left mandible and on the inner left Tympanic bulla. These invisible fluorescent markings illuminate when examined with a black light. The parcel's shipment details revealed that the shipment originated in Indonesia, the shipper's name was listed as CC-2, and the intended recipient was listed as BIED with an address in Reading, Massachusetts and provided a phone number. The parcel was repackaged and was delivered to BIED's residence.

10

41.     On or about March 11, 2021, BIED received the UPS parcel from CC-2 that contained skull the orangutan skull and the three leopard skulls that were secreted in the parcel.

42.     BIED used PayPal to purchase these skulls from CC-2.  On or about February 22, 2021, BIED sent CC-2 $1,200 for the orangutan skull. On or about February 24 2021, BIED sent CC-2 $1,400 for the three leopard skulls.



*Exhibit 2  - Orangutan and Leopard Skulls found in the March 2021 package*

All in violation of 18 U.S.C. § 371.

## COUNT THREE
## Lacey Act Trafficking
## (16 U.S.C. §§ 3372 (a), 3373(d))

43. The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-19 of this Information.

44. Between on or about May 6, 2021, and May 11, 2021, in the District of Massachusetts, and elsewhere, the defendant,

ADAM BIED,

knowingly sold wildlife, that is the skull from a Javan Leopard (*Panthera pardus melas*), knowing that such wildlife was transported and imported in violation of the laws, treaties, and regulations of the United States, to wit Title 16, United States Code, Section 1538(a)(1)(A) and 1540(b).



*Exhibit 2 - Javan Leopard Skull from the March 2021 package*

All in violation of 16 U.S.C. §§ 3372(a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).

COUNT FOUR
Lacey Act Trafficking
(16 U.S.C. § 3372 (a), 3373(d))

45. The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-19 of this Information.

46. Between on or about between May 14, 2021, and May 17, 2021, in the District of Massachusetts, and elsewhere, the defendant,

ADAM BIED,

knowingly sold wildlife, that is the skull from a Javan Leopard (*Panthera pardus melas*), knowing that such wildlife was transported and imported in violation of the laws, treaties, and regulations of the United States, to wit Title 16, United States Code, Section 1538(a)(1)(A) and 1540(b).



*Exhibit 3 – Marked Javan Leopard Skull from the March 2021 package*

All in violation of 16 U.S.C. §§ 3372(a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).

## COUNT FIVE
## Lacey Act Trafficking
## (16 U.S.C. § 3372 (a), 3373(d))

47. The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-19 of this Information.

48. Between on or about July of 2020 and August 30, 2020, in the District of Massachusetts, and elsewhere, the defendant,

ADAM BIED,

knowingly sold wildlife, that is the skull of a Malayan sun bear, also known as the "honey bear", knowing that such wildlife was transported and imported in violation of the laws, treaties, and regulations of the United States, to wit Title 16, United States Code, Section 1538(a)(1)(A) and 1540(b).



All in violation of 16 U.S.C. §§ 3372(a), 3373(d), and 16 U.S.C. §§ 1538(a)(1)(A), 1540(b).

## FORFEITURE ALLEGATION
(16 U.S.C. §§ 1540(e)(4), 3374(a), 18 U.S.C. §§ 545, 981(a)(1)(C), 982(a)(2)(B), 19 U.S.C. § 1595a(c)(2)(B) and 28 U.S.C. § 2461(c))

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 371 (Conspiracy to Violate (1) Title 18 United States Code, Section 545 (Smuggling Goods into the United States); (2) Title 16, United States Code, Sections 3372(a), 3373(d) (the Lacey Act), and Title 16, United States Code, Sections 1538(a)(1)(A) and 1540(b) (the Endangered Species Act)), as set forth in Counts One and Two, and Title 16, United States Code, Sections 3372(a), 3373(d) (the Lacey Act, as set forth in Counts Three through Five; the defendant,

### ADAM BIED,

shall forfeit to the United States:

    a. for Counts One and Two, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, and pursuant to Title 16, United States Code, Section 1540(e)(4), all fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of this chapter, any regulation made pursuant thereto, or any permit or certificate issued hereunder;

    b. for Counts One through Five, pursuant to Title 16, United States Code, Section 3374(a), and Title 28, United States Code, Section 2461(c), all fish or wildlife or plants bred, possessed, imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of section 3372 of Title 16

15

(other than section 3372(b) of this title), or any regulation issued pursuant thereto, and all vessels, vehicles, aircraft, and other equipment used to aid in the importing, exporting, transporting, selling, receiving, acquiring, or purchasing of fish or wildlife or plants in a criminal violation of the Act;

c. for Counts One and Two, pursuant to Title 18, United States Code, Section 545, any merchandise introduced into the United States in violation of Section 545, or the ]value thereof, and, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation; and

d. for Counts One through Five, pursuant to Title 19, United States Code, Section 1595a(c)(2)(B), any merchandise which was introduced or attempted to be introduced into the United States contrary to law and its importation or entry required a license, permit or other authorization of an agency of the United States Government and the merchandise was not accompanied by such license, permit, or authorization.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 16, United States Code, Sections 1540(e)(4), 3374(a); Title 18, United States Code, Sections 545, 981(a)(1)(C), 982(a)(2)(B); Title 19, United States Code, Section 1595a(c)(2)(B), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), both incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 16, United States Code, Sections 1540(e)(4), 3374(a), Title 18, United States Code, Sections 545, 981(a)(1)(C), and 982(a)(2), Title 19, United States Code, Section 1595a(c)(2)(B), and Title 28, United States Code, Section 2461(c).

Respectfully Submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Nadine Pellegrini*
Nadine Pellegrini
Assistant U.S. Attorney

Dated: June 12, 2024