IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>ADAM BIED<br><br>Defendant. | Criminal Nos.  24-10171-FDS |

### DEFENDANT'S REPLY TO THE GOVERNMENT'S REPONSE
### TO DEFENDANT'S MOTION TO COMPEL [LEAVE GRANTED 2/26/2025]

This is defendant Bied's reply to the government's opposition, ECF 43, to his motion to compel it to identify and allow inspection of certain wildlife specimens previously seized from him and which the government will attempt to introduce as part of its case-in-chief at trial. Defendant requests that this disclosure be made at a reasonable date, sufficient to allow the wildlife remains to be inspected by a qualified expert and in time for defendant to prepare his defense.  The government contends that defendant has no right until three weeks before trial to be informed as to which specimens it will use and then only per order of the District Judge.

The government's arguments are without substance.

**1. Why the defendant needs timely access to the specimens which the government will try to introduce at trial**

**Count One** of the Information (ECF 1-6) alleges that over a 3½ year period, from January 2018 until June 2021, defendant and CC-1 conspired to and did import, buy, and sell (among other illegal acts) protected wildlife from Cameroon. In that connection the Information specifically references "pangolin, chimpanzee, and mandrill" skulls as well as "baboon skulls, monkey skulls and an eagle skull."  **Count Two** alleges that between February 2020 and April

2021 defendant and CC-2 conspired to and did import, buy, and sell (among other illegal acts) protected wildlife from Indonesia. In that connection, the Information references "various species of primates and other mammals," and "particularly the skulls of endangered and protected species, including leopard, orangutan, and the sun bear."

On January 31, the Court ordered the government, no later than February 28, 2025, to make available for defendant's examination "the specimens in the Government's possession that are referenced in the Information." ECF 37-2.

On February 7, 2025, the defendant moved to compel the government to identify and allow inspection of any specimens which the government "intends to use in its case in chief." ECF 41. Alternatively, failing the specific disclosure of the specimens to be used, defendant requests access to all of the seized objects.

The government filed a Response on February 21. ECF 43. As to **Count One**, the government states that although it has specimens seized from the defendant in its possession, it ***cannot prove that any of them were obtained from CC-1 or as part of the Count One conspiracy***. It says that these may have been obtained by defendant from another source or at another time. Some of them, the government says, may be "similar."[1] As to Count Two, the government states that it has two leopard skulls which were tracked to a USPS facility in Kentucky, then sent to defendant, and ultimately purchased by an undercover agent. It otherwise has no other specimens which can be directly connected to the defendant.

It is apparent that the government's plan with respect to specimens which the government concededly cannot prove to have come from CC-1 or CC-2, is to fill the hole by

---

[1] "To the extent that similar skulls might have been located during law enforcement searches – which occurred several years later than the charged conduct – of the Defendant's home and storage facility in which he kept these items, there is insufficient information to allow the government to state that those items are the same ones the Defendant conspired to obtain as a result of the agreement." ECF 43, p. 2

2

introducing "similar" specimens which are "like" the species listed in Count One and Two and which were found in defendant's possession -- thus inviting an inference that defendant must have dealt in endangered species with CC-1 or with CC-2 as alleged in the Information. Putting aside whether the rules of evidence would permit the use of "similar" objects for this purpose, and whether any particular skull can be shown to have been actually obtained from CC-1 or CC-2, there remains the fundamental question of whether the item is even a genuine example of the protected species in issue. That question is central to the case. If the government cannot prove that a particular skull is from an endangered species, then it will necessarily be unable to prove that defendant did anything unlawful. It is therefore essential to a fair trial that any such evidence be carefully and thoroughly inspected by a qualified expert who can compare it to actual, verifiable skeletons and to do so in sufficient time to prepare the defense. If the defendant cannot in the near term obtain disclosure of and access to the particular objects which the government intends to use, he will need to have experts examine a great many possible candidates, resulting in a far greater need for both time and resources that would otherwise be required.

### **The Government's objections**

Defense counsel have consistently expressed concern about this situation. Until the government filed the instant response, it took the position that defendant had no right to inspect any of the seized specimens at all -- on the ground that they related only to the civil forfeiture claim, and not the criminal case. It also categorically denied that it was reserving the right to use any of these specimens as Rule 404(b) evidence at trial. See Transcript, Dec. 5, 2025, p. 12; Pellegrini letter to Stern et al, ECF 33-4, p.2. The government has now abandoned the contention that the seized specimens are not relevant to the criminal case and it no longer denies

3

that it plans to use some as part of the items as 404(b) evidence.  Instead, its current argument is that that the defendant has no right to know which of the many seized items (now believed to number 161) it will use until just before trial. It contends that only a District Judge can order the disclosure to be made earlier.

The government has three arguments. First, as to the Court's order of January 31 to produce specimens of the species which are referenced in the Information, it asserts that "those references are included only as 'general allegations' which are not part of the charged conduct," ECF 43, p. 2, and "do not have the same connection to the charged crimes."  Pellegrini to Stern email (February 19, 2025)(Exhibit A).  It also claims that it does not need to produce any specimens to prove either conspiracy because the "heart" of the offense is just an agreement between the conspirators.  But this does not mean that it will not attempt to prove that the listed species were in fact traded; indeed, that is exactly what Counts One and Two actually allege.  By the same token, the defendant must have a correlative right to disprove the government's claims of actual trafficking and that will entail extensive inspections of specimens and much more than a few weeks.  That is why Rule 16(a)(1)(E)(i) calls for the defendant to obtain as part of the pretrial discovery process, tangible items which are "material to preparing the defense." [2]

Second, in a remarkably circular argument, the government asserts that it does not have to follow the Rule 16(a)(1)(E)(2) requirement that it disclose evidence it "intends to use in its case-in-chief" -- because the evidence is not really case-in-chief evidence.  This is because, according to the government, even though the use of 404(b) evidence ***"takes place – as it-must –***

---

[2] In light of the government's claim that it considers the various species listed in Counts One and Two are only "general allegations," and therefore are not subject to the ordinary disclosure requirements for other accusations, defendant has now also requested in a discovery letter that the government supply the defendant with a bill of particulars which will inform him of "what he must be prepared to meet."  *United States v. Santa-Manzano*, 842 f.2d 1, 2 (1st Cir. 1988) citing *Russell v. Unted States*, 369 U.S. 749, 763 (1962).  See Exhibit B.

*during the presentation of its case-in-chief, [i]t is not actual evidence of the case-in-chief."* ECF 43, p.4. The strength of this tautological argument -- one worthy of Lewis Carroll – speaks for itself.[3]

Finally, the government argues that Local Rule 117.1 provides the exclusive method and a mandatory schedule for a defendant to obtain notice of Rule 404(b) evidence, i.e., only by order of the District Judge and not earlier than 21 days before trial, thus prohibiting this Court to order it now.  Not so.  The local rule only sets a deadline for when the government *"must"* provide "a general description (including the approximate time and place) of any crime, wrong or act the government proposes to use pursuant to Fed.R.Evid. 404(b)."  The rule says nothing about tangible objects.  Nor is there anything in the local rule which prohibits the defendant from getting access to such evidence earlier than just before trial, or at the order of the Magistrate-Judge applying Rule 16.[4]

**Conclusion**

For the reasons set forth above and in the defendant's motion to compel the Court should order the government to identify and make available for expert examination any specimens it intends to use in its case-in-chief"   The Court should set a date for the government's disclosure.

---

[3] 'Let the jury consider their verdict, the King said, for about the twentieth time that day.'
"No, no!' said the Queen.  'Sentence first – verdict afterwards."

[4]   The government cites *United States v. Agramonte-Quezada*, 30 F. 4th 1, 8 (1st Cir. 2022).  It is not clear for what purpose. In that case, the Court of Appeals held that the district court had not abused its discretion in failing to grant a trial continuance when the government had made a minor belated disclosure of a prior incident – involving the use of a drug detection dog --  where the defendant argued that the delay prevented him from employing a needed expert. The Court held, however, that the defendant "***could have sought an expert once he knew that the government intended to introduce canine evidence at trial (emphasis added).***" This case presents the opposite situation.  Here the defendant is trying to obtain the needed evidence in time, while the government is trying to prevent him from doing so.

The only other case cited by the government is one in which Judge Saylor declined to grant a request for a pre-plea probation report.  *United States v. Hilaire*, No. 19-10043-FDS, 2019 U.S. Dist. LEXIS 123004 (D. Mass. July 24, 2019).  Its relevance to this case is a mystery.

5

In the alternative, the government should make all of the specimen's seized from the defendant available for expert examination.

Respectfully submitted,

By His Attorney,

*/s/ Max D. Stern*

Max D. Stern, Esq. (BBO No. 479560)
Hannah Black, Esq. (BBO No. 705484)
Shayla Mombeleur, Esq. (BBO No. 698707)
Todd & Weld LLP
One Federal Street
Boston, MA 02110
(617) 720-2626
mdstern@toddweld.com
hblack@toddweld.com
smombeleur@toddweld.com

Dated: February 27, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 27, 2025.

*/s/ Max Stern*
Max Stern